UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-169-GWU

EDWIN CALLEBS, PLAINTIFF,

VS.        **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Edwin Callebs brought this action to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits (DIB). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

09-169 Edwin Callebs

> in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.
>
> 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

09-169  Edwin Callebs

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

09-169 Edwin Callebs

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

09-169 Edwin Callebs

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

6

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Callebs, an illiterate, 46-year-old former school janitor, school bus driver and cashier, suffered from impairments related to arthritis/degenerative changes in the spine, high blood pressure, an injury to the right foot with a history of an open reduction internal fixation, and diabetes with early neuropathy. (Tr. 11, 14). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of sedentary level work. (Id.). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 14-15). The ALJ based this decision, in part, upon the opinion of a vocational expert. (Tr. 14).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. However, an immediate award of DIB is not mandated. Therefore, the court must grant the plaintiff's summary judgment motion in so far as it seeks a remand of the action, and deny that of the defendant.

7

09-169 Edwin Callebs

The ALJ found that Callebs was limited to sedentary level work restricted from a full range by a need to avoid climbing ladders, ropes or scaffolds, a limitation to simple one- to two-step instructions and no requirement of reading. (Tr. 11). These restrictions were presented to Vocational Expert Bill Ellis who identified a significant number of jobs which remained available. (Tr. 25-26). The ALJ relied upon this information to support the denial decision.

The ALJ erred in evaluating Callebs's physical condition. The claimant asserts that the ALJ erred in rejecting the opinion of Dr. William Durham, a treating source. Dr. Durham was the only treating or examining physician of record to identify specific work-related physical limitations. In a September, 2007 assessment, the doctor indicated that the plaintiff would be unable to lift more than 10 pounds, to stand or walk for more than a total of 30 minutes a day, would never be able to climb, crouch, kneel or crawl, would only be able to occasionally balance, and would need to avoid exposure to heights, moving machinery, and vibration. (Tr. 221-224). These are more severe physical restrictions than those found by the ALJ. The ALJ rejected this opinion as binding because he did not believe that it was well-supported by objective medical data. (Tr. 13). Nevertheless, the opinion does not support the administrative decision.

Dr. Amanda Lange, a non-examining medical reviewer, was the only other physician of record to identify specific functional limitations. (Tr. 192-199). An ALJ

may rely upon the opinion of a non-examiner over that of an examining source when the non-examiner clearly states the reasons for his differing opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Social Security Ruling 96-6p suggests that when the examining source is also a treating physician, the non-examiner needs to have reviewed a complete record which includes a medical report from a specialist in the individual's particular impairments which provides more detailed and comprehensive information than that which was available to the treating physician. In the present action, Dr. Lange reviewed the record on February 8, 2007. (Tr. 199). Thus, she had no opportunity to review Dr. Durham's September, 2007 assessment or the medical reports from Dr. Rahul Dixit (Tr. 200-202), Dr. Jean-Maurice Page (Tr. 214-216), and the staff at Simon and True Medical Consultants (Tr. 218-220). Furthermore, Dr. Lange identified restrictions concerning the plaintiff's ability to push and pull with the lower extremities and a limitation to no more than occasionally climbing ramps and stairs which were not presented to the vocational expert. (Tr. 193-194). Thus, this opinion arguably identifies more severe restrictions than those found by the ALJ as well. Under these circumstances, the ALJ could not rely upon Dr. Lange to support the administrative decision. Therefore, a remand of the action for further consideration is required.

Upon remand of the action, the administration should carefully consider Callebs's mental condition, particularly whether he meets the requirements of §

09-169  Edwin Callebs

12.05(C) of the Listing of Impairments concerning mental impairments. This Listing requires a claimant to produce:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

20 C.F.R., Part 404, Subpart P, App. 1, § 12.05(C). The regulations further provide that: "Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence supports onset of the impairment before age 22." 20 C.F.R., Part 404, Subpart P, App. 1, § 12.05. Thus, to satisfy the requirements of § 12.05(C), a claimant must demonstrate an IQ in the appropriate range which was manifested in the developmental period as well as another mental or physical impairment.

Psychologist Reba Moore examined Callebs in March of 2007 and her report appears in the record as Exhibit 10F. (Tr. 203-210). Intelligence testing produced a Verbal IQ score of 63, a Performance IQ score of 68 and a Full Scale IQ score of 62, all scores within Listing range. (Tr. 205). The examiner specifically indicated that these scores were <u>valid</u> and she diagnosed mild mental retardation along with a depressive disorder. (Tr. 207-208). Thus, Moore's report provides valid IQ scores within Listing range while the claimant's extensive physical problems as found by the ALJ provide another physical impairment. The only issue remaining would be

whether deficits in adaptive functioning manifested themselves during the developmental period. The undersigned notes that the Eleventh Circuit Court of Appeals has found that in the absence of evidence of a sudden trauma that can cause mental retardation, a valid IQ test creates a rebuttable presumption of fairly constant IQ throughout life. Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001). The Fourth Circuit Court of Appeals has long held that courts should assume an IQ score remained constant through life absent evidence indicating a change in intellectual functioning. Luckey v. U.S. Dept. of Health and Human Services, 890 F.2d 666, 668 (4th Cir. 1989). Callebs's illiteracy would arguably provide some evidence of deficits in adaptive functioning prior to the age of 22. Therefore, § 12.05C should be very carefully considered following remand.

Even if the Listing were not met, Moore also identified a number of very severe mental restrictions which far exceeded the mental limitations found by the ALJ. (Tr. 209-210). Thus, Moore's report provided very strong evidence of disabled status for Callebs.

The court notes that the ALJ did not address Moore's opinion in the denial decision. (Tr. 9-19). Perhaps even more surprising, Attorney Charley Greene Dixon, Callebs's representative in this action, did not raise any issues concerning this omission despite being the one who referred the claimant to Moore. (Tr. 203). This omission is very curious to the undersigned. Upon remand, the ALJ needs to

make clear exactly what weight Moore's report is entitled to and the reasons for this determination.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. Therefore, the court must grant the plaintiff's summary judgment motion to this extent and deny that of the defendant. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 21st day of January, 2010.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**